ESTATE OF ALBERT L. DOUGHERTY, DECEASED, ALLEN L. DOUGHERTY and CHARLOTTE K. DOUGHERTY, CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Dougherty v. Commissioner
Docket No. 35129-83
United States Tax Court
T.C. Memo 1990-274; 1990 Tax Ct. Memo LEXIS 292; 59 T.C.M. (CCH) 772; T.C.M. (RIA) 90274; May 31, 1990, Filed *292 Decision will be entered under Rule 155. Robert E. Johnson, Marc A. Hetzner, Roger L. Kessler, and Lisa A. Lutz, for the petitioner. Elsie Hall, for the respondent. HAMBLEN, Judge. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 1,882,702.95 in the Federal estate tax liability of the estate of Albert L. Dougherty. After concessions, [1] the issues to be decided are 1) the fair market value of the decedent's 1,504-acre tract of real property located in Charlotte County, *293 Florida; and 2) the fair market value of the decedent's 100-percent beneficial interest in the A. L. Dougherty Revocable Trust of 1964, which owned all of the stock of A. L. Dougherty Co., Inc. *294 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Decedent, Albert L. Dougherty, was a resident of Indiana when he died on February 5, 1980. Petitioner's address is 139 N. Vermilion Street, Danville, Illinois 61832. On November 5, 1980, decedent's Federal estate tax return was timely filed with the Office of the Internal Revenue Service at Memphis, Tennessee. The estate tax return did not include an election to apply the alternate valuation date under section 2032. Petitioner reported a taxable estate of $ 3,774,948.04. Decedent's reported gross estate included 1,504 acres of land in Charlotte County, Florida. The Charlotte County property was reported on Schedule A of decedent's estate tax return at a date-of-death fair market value of $ 902,400. Decedent's reported gross estate also included decedent's 100-percent beneficial interest in the A. L. Dougherty Revocable Trust of 1964, which was reported on Schedule F of decedent's estate tax return at a date-of-death fair market value of $ 4,000,000. Value of Charlotte County Property
The *295 Charlotte County property was reported on decedent's estate tax return at a date-of-death fair market value of $ 902,400 based on a report prepared for petitioner by J. Gordon Colcord dated April 30, 1980, and amended by letter dated May 5, 1980. The Charlotte County property, which has an irregular shape, has approximately one mile of highway frontage along State Road 45 and has an average depth of about two and one-half miles. The property is at an elevation of approximately 24 to 25 feet above sea level, and the grades of the uncompleted Interstate 75, the S.C.L. Railroad, and the former S.A.L. Railroad tend to protect the property from the southerly sheet flow of water across Charlotte County in the rainy seasons. The property does not present any major drainage problems. The property was zoned agricultural by the Charlotte County Zoning Department. Permitted uses under the agricultural zoning classification include cattle, sheep, poultry, and dairy herd production. Other permitted uses include harvesting, cultivation, sale of crops from premises, and single family dwellings, barns, workshops, and other structures incidental to agricultural uses. Development standards defined *296 by the agricultural zoning classification restrict development to a maximum lot coverage of ten percent and one residence to ten acres. The Charlotte County property is served only by electric and telephone service; water must be obtained by well and pump. Sewage is disposed of by septic tank, subject to an approved percolation test. Allen L. Dougherty, a co-executor of the estate, valued the Charlotte County property for petitioner and concluded that the date-of-death value was $ 1,203,200. Allen Dougherty is the son of the decedent. W. Stanley Hanson, Jr., and David C. Vaughan prepared an appraisal of the Charlotte County property for respondent. In their appraisal, dated November 18, 1982, W. Stanley Hanson, Jr., and David Vaughan concluded that the date-of-death value of the Charlotte County property was $ 1,700,000. W. Stanley Hanson, Jr., respondent's expert, has been designated a Member of the American Institute of Real Estate Appraisers (M.A.I.), by the American Institute of Real Estate Appraisers and a Senior Real Property Appraiser by the Society of Real Estate Appraisers. Mr. Hanson is also a member of the American Right of Way Association, the National Association *297 of Realtors, the Florida Association of Realtors and the Fort Myers Board of Realtors. Mr. Hanson was the Lee County, Florida, Tax Assessor from August 1955 to 1961. Mr. Hanson has been engaged in the sale and appraisal of real estate since 1963, and has been engaged exclusively as an independent fee appraiser since 1965. Mr. Hanson has qualified as an expert witness in various Federal and State courts. Mr. Hanson's clients include government agencies, banks and lending institutions, and numerous corporate clients. Mr. Hanson inspected the Charlotte County property on October 29, 1982. Normal monthly rainfall in Charlotte County is the lowest in November. The next driest months in Charlotte County are, in order, December, January, February, April, March, and October. The wettest months in Charlotte County are September, June, July, and August. In his report, Mr. Hanson stated that the front portion of the subject property, containing about 260 acres along State Road 45, was perceived by the market as benefiting from a higher unit value than the rear portion of the property, which consisted of about 1,244 acres. Mr. Hanson explained that because the growth path was moving *298 along State Road 45 towards the property from both Punta Gorda and Fort Myers, it appeared that investors anticipated faster development of the State Road 45 frontage property than of the rear portion which contained no frontage along any public maintained highways. Mr. Hanson's opinion was that the highest and best use of the property as of the date of death was potential development with an interim use for agriculture for the front 260 acres, and potential development with a longer interim use for agriculture for the rear portion. After presenting and analyzing sales data with respect to ten comparable sales, Mr. Hanson valued the property using two sets of market data in order to give recognition to the effect of the frontage along State Road 45. These two analyses resulted in a value determination for the front 260 acres of $ 2,700 per acre, or a rounded figure of $ 700,000, and a determination of $ 825 per acre for the rear 1,244, or a rounded figure of $ 1,000,000, for a total for both the front and rear acreage of $ 1,700,000. Value of A. L. Dougherty Revocable Trust
The A. L. Dougherty Revocable Trust of 1964 (hereinafter Trust) was created in 1964, was amended and *299 restated on July 8, 1970, and continued in existence in that form through the decedent's date of death. The Trust was reported on the decedent's estate tax return at a fair market value of $ 4,000,000 based on a report by American Valuation Consultants, Inc., dated October 29, 1980. The Trust provides that 50 percent of the decedent's adjusted gross estate is to be paid to a marital trust for the decedent's surviving wife. The sole asset of the Trust on the date of death was 100 percent of the outstanding stock of A. L. Dougherty Co., Inc., a Delaware corporation. The assets of A. L. Dougherty Co., Inc., consist primarily of notes receivable and accrued interest, marketable securities, real estate, and investments in partnership interests. On the date of the decedent's death, A. L. Dougherty Co., Inc., owned a 40-percent interest in Estero Bay Land, Ltd. In a letter to Allen Dougherty dated October 2, 1980, Clayton R. Zehner stated that the value of 9.372 acres of vacant land owned by Estero Bay Land, Ltd., was $ 200,000 on the date of the decedent's death. An appraisal of the Farlow Farm located in Paoli, Indiana, and owned by A. L. Dougherty Co., Inc., was performed for petitioner *300 by Larry Boyer. This appraisal, dated May 19, 1980, arrived at a value of $ 52,800 on the date of the decedent's death. An appraisal of 39.3 acres of vacant land in Bloomington, Indiana, owned by A. L. Dougherty Co., Inc., was performed for petitioner by Thomas A. Kovach. This appraisal, dated April 7, 1980, arrived at a value of $ 70,500 on the decedent's date of death. On the decedent's date of death, A. L. Dougherty Co., Inc., owned a 50-percent interest in 1,063 acres located near Telegraph Creek in Lee County, Florida (hereinafter the Lee County property). A. L. Dougherty Co., Inc., also owned 717.63 acres of land located in Collier County, Florida (hereinafter the Collier County property). Value of Lee County Property
The only access to the Lee County property is from State Road 78, which is on the southern border of Section 14 of the property and an unimproved easement along the southern border of Section 9, west of the subject property. The Lee County property includes about 282 acres of environmentally sensitive areas. The American Valuation Consultants, Inc., appraisal of the A. L. Dougherty Co., Inc., stock, which was used in preparing the estate tax return, *301 relies on an appraisal of the Lee County property prepared for petitioner by J. Gordon Colcord on April 30, 1980. In his appraisal, Mr. Colcord concluded that the value of the Lee County property was $ 531,500. Mr. Colcord then discounted the value of the property by ten percent for the undivided interest which gave a value of $ 478,350 and determined that the value of A. L. Dougherty Co., Inc.'s 50 percent was $ 239,175. An appraisal of the Lee County property was prepared for the respondent by Mr. Hanson. The Hanson appraisal, dated November 16, 1982, concluded that the date-of-death value of the Lee County property was $ 1,300,000. In his report, Mr. Hanson found that there were two separate economic forces which appeared to be affecting the value of the Lee County parcel. Mr. Hanson found that the front portion, containing about 120 acres, had a higher value per acre than the rear portion, which contained approximately 943 acres. Mr. Hanson based this conclusion on land use patterns in the area, particularly his comparable sale number three. Mr. Hanson's comparable sale number three, which was along the west side of the 120 acres of the subject property, sold for an indicated *302 value of $ 3,422 per acre. Mr. Hanson stated that the development of the property from comparable sale number three into Telegraph Creek Estates, which consists of one-acre homesites, showed the potential of the subject property to be developed for low density residential purposes. Mr. Hanson stated that the highest and best use of the front 120 acres of the Lee County property as of the appraisal date was for potential residential development of single family homesites with a maximum density of one unit per acre. This highest and best use was allowable under the agricultural zoning classification that allowed homesites with a maximum density of one unit per acre. Inherent in Mr. Hanson's conclusion was the assumption that the interim use for the property until the potential development was realized would remain agricultural/pasture to hold down the real estate taxes. Mr. Hanson stated that because of lack of public access to the rear acreage and a location which was farther north than the front acreage, the highest and best use of the rear 943 acres was for agriculture with a much later use for potential development. In his report, Mr. Hanson identified three prior sales which *303 were comparable to the front 120 acres, and four sales which were comparable to the rear 943 acres. The data from the comparable sales were adjusted for a number of factors including time, location, and site differences to reflect the dissimilarities with the subject property. A value for each portion of the subject property was then derived and converted into a value for the overall property. Mr. Hanson concluded that the indicated value was $ 408,000 for the front portion and $ 895,850 for the rear portion for a total of $ 1,303,850 or a rounded figure of $ 1,300,000 for the entire fee interest. Mr. Hanson did not value the A. L. Dougherty Co., Inc.'s 50-percent interest in the property. An appraisal of the Lee County property was prepared for petitioner by Donald S. Rogers. In his appraisal dated April 6, 1987, Mr. Rogers concluded that the date-of-death value of the Lee County property was $ 900,000 for the entire fee interest. Petitioner's expert, Mr. Rogers, is an Indiana appraiser who prepares approximately 250 appraisals each year. Mr. Rogers focuses primarily on commercial rather than agricultural real estate. Mr. Rogers had never appraised Florida real estate before *304 making the appraisal for petitioner, although he once critiqued someone else's appraisal of Florida real estate. Mr. Rogers has never been licensed as a real estate broker in the State of Florida. Mr. Rogers began his three-day inspection regarding the Lee County property on March 30, 1987. Mr. Rogers inspected all of the properties he used as comparable sales in his report. Mr. Rogers, in inspecting Mr. Hanson's Lee County comparable sales numbered two, three, and four, found the comparable sale properties and analyzed their sizes, shapes, positions, road frontages, and water frontages. However, Mr. Rogers did not inspect all of the comparables which had been used by Mr. Hanson. Mr. Rogers relied upon Mr. Hanson's Lee County property appraisal for the sales price of some of the properties in the area and for the additional comparable sales cited in his appraisal. Mr. Rogers also relied heavily on information given to him by Thomas H. Baker, a realtor who acquired all of the Lee County property as a broker and remained as a principal partner with A. L. Dougherty Co., Inc. Mr. Rogers also relied on information from Thomas R. Baker, a realtor and the son of Thomas H. Baker. *305 Allen L. Dougherty also valued the Lee County property for petitioner. Mr. Dougherty concluded in a report dated April 1, 1987, that the date-of-death value of the Lee County property was $ 903,550 for the entire fee interest. Value of Collier County Property
On the date of the decedent's death, A. L. Dougherty Co., Inc., owned 717.63 acres of vacant, unimproved land located in Collier County, Florida. Addison B. Miller, President of Ad Miller Associates, Inc., valued the Collier County Property at $ 4,500,200 as of the date of the decedent's death for petitioner on May 13, 1980. Mr. Miller died prior to the trial of this case. Mr. Miller's appraisal was used in the preparation of the decedent's estate tax return. Kushman, Stokes, Armalavage, Inc., (hereinafter Kushman, Stokes) prepared an appraisal of the Collier County property for petitioner on October 27, 1986. In the appraisal, Kushman, Stokes concluded that the value of the Collier County property on the date of the decedent's death was $ 4,362,000. However, the figure of $ 4,362,000 was not a cash or cash equivalent figure. Willis Kushman of Kushman, Stokes is an M.A.I., and a member of the International Right *306 of Way Association. Mr. Kushman has been working as an appraiser in the State of Florida since 1973 and before 1973 was a real estate broker and salesman in other states. The Kushman, Stokes appraisal valued the Collier County property as four parcels. Parcel one was valued at $ 475,000, parcel two was valued at $ 2,597,000, parcel three was valued at $ 400,000, and parcel four was valued at $ 890,000. The total value of the Collier County property as appraised by Kushman, Stokes was therefore $ 4,362,000. The 1980 assessed value of parcel one was $ 189,300. The 1980 assessed value of parcel two was $ 1,448,150. The 1980 assessed value of parcel three was $ 2,034,025. The 1980 assessed value of parcel four was $ 693,275. Allen L. Dougherty also valued the Collier County property for petitioner. Mr. Dougherty concluded that the date-of-death value of the Collier County property was $ 4,105,080. An appraisal of the Collier County property plus additional real estate (parcel D) was prepared for respondent by Woodward S. Hanson on February 13, 1986. Woodward Hanson valued the Collier County property as six parcels as follows: Parcel A
$ 2,090,300
Parcel B
252,800
Parcel C
682,500
Parcel D
567,000
Parcel E
926,300
Parcel F (Kushman parcel 3)
1,835,300
Total value
$ 6,354,200
*307 Parcel D was not owned by the decedent on the date of the decedent's death. The value determined by Woodward Hanson exclusive of parcel D was $ 5,787,200. At the time of his appraisal, Woodward Hanson was an M.A.I. candidate, and has since then been designated an M.A.I. by the American Institute of Real Estate Appraisers. Woodward Hanson has been associated with his father, W. Stanley Hanson, Jr., as an associate appraiser since June of 1977. In performing his analysis of the subject parcels in Collier County, Woodward Hanson established a data base consisting of 19 comparable sales which bracketed the decedent's date of death. Woodward Hanson performed a paired sales analysis to determine his time adjustment. Woodward Hanson's report contains grids showing his adjustments for time, cash equivalency, and size. In addition, Woodward Hanson performed an analysis based on the number of dwelling units per acre. Value of A. L. Dougherty Co., Inc.
An appraisal of A. L. Dougherty Co., Inc., was prepared for petitioner by Valuation Research Corporation on June 4, 1985. In the Valuation Research appraisal, Ernest J. Lawinger determined that the date-of-death value of the A. *308 L. Dougherty Co., Inc., was $ 4,300,000. A revised appraisal of A. L. Dougherty Co., Inc., was prepared for petitioner by Valuation Research Corporation on April 7, 1987. In the revised Valuation Research appraisal, Mr. Lawinger again determined that the date-of-death value of A. L. Dougherty, Co., Inc., was $ 4,300,000. Mr. Lawinger is the Senior Vice President and Professional Services Manager - Finance for Valuation Research Corporation. Mr. Lawinger has over 15 years of valuation experience, primarily in areas relating to business enterprise valuation, appraisals of closely held stock, and appraisals of intangible assets. Mr. Lawinger is a Senior Member of the American Society of Appraisers, a Fellow of the Financial Analysts Federation, and a Member of the Milwaukee Investment Analysts Society. Mr. Lawinger valued A. L. Dougherty Co., Inc.'s interest in the Lee and Collier County properties and real property in Bloomington, Indiana, as follows: Market Value of Indicated
% of
Company's
Appraised
Market
Company's
Owned Property
Value
Discount
Value
Ownership
Interest Bloomington, IN
$ 71,000   .8529
$ 60,556   100
$ 60,556   Lee County, FL
900,000
.6718
604,620
50 302,310
Trust
Collier County,
4,362,000
.6718
2,930,392
100
2,930,392
FL
Total Value Growth Land Held for Sale      3,293,258
Rounded      3,300,000
*309 Mr. Lawinger applied discounts to the appraised values of the properties to reflect risks associated with liquidation. The discounts take into account the period of time necessary to liquidate the property, the cost of money, and the risks associated with recovering the income from the property. Mr. Lawinger valued of the assets and liabilities of A. L. Dougherty Co., Inc., as of the date of death as follows: Assets:
Fair Market Value
Notes Receivable Secured by Mortgages
$ 840,000        Demand Notes Receivable
470,000      Marketable Securities
250,000      Fixed Assets
54,000      Long Term Investments
3,300,000      Partnership Interest
1,838,000      Miscellaneous Assets
59,000      Subtotal
$ 6,811,000      Less Liabilities
194,000      Indicated Value
$ 6,617,000      Rounded
$ 6,620,000      Mr. Lawinger concluded that a ten-percent discount for incremental management costs due to the nonhomogeneous nature of the assets of A. L. Dougherty Co., Inc., was appropriate. Mr. Lawinger also concluded that a 25-percent discount for lack of marketability *310 was appropriate. Accordingly, Mr. Lawinger reduced the total asset value of $ 6,620,000 by 35 percent to reach a value for the A. L. Dougherty, Co., Inc., of $ 4,300,000. An appraisal of A. L. Dougherty Co., Inc., was prepared for respondent by J. J. B. Hilliard, W. L. Lyons, Inc., on September 17, 1985. The co-authors of the Hilliard-Lyons report were James E. Graves and E. Halsey Sandford. Mr. Graves, a vice president of Hilliard-Lyons, was designated a chartered financial analyst by the Institute of Chartered Financial Analysts. Mr. Sandford is a senior vice president and director of Hilliard-Lyons. The original Hilliard-Lyons appraisal, which used the Miller value of $ 4,500,200 for the Collier County property, concluded that the date-of-death value of A. L. Dougherty Co., Inc., was $ 6,300,000. The original Hilliard-Lyons appraisal valued the assets and liabilities as of the date of death as follows: Assets:
Cash and due from IRS
$ 40,000   Securities
263,000
Notes Receivable
Due Before 12/31/80  494,000
Due After 12/31/80  769,000
Interest Receivable  94,000
Real Estate
Farlow Farm  53,000
Bloomington, IN  71,000
Lee County, FL  552,000
Collier County, FL  4,500,000
Estero Bay Land, Ltd.
1,764,000
Total Assets
$ 8,600,000
Less Liabilities
339,000
Net Asset Value
$ 8,261,000
*311 Hilliard-Lyons' valuation of the Lee County property reflects an adjustment of 50 percent for the A. L. Dougherty Co., Inc.'s 50-percent ownership, and a co-tenancy discount of 15 percent. To value the A. L. Dougherty Co., Inc., stock, Hilliard-Lyons reduced the net asset value by $ 300,000 to reflect operating and liquidation costs, and then reduced the resulting $ 7,961,000 by a 20-percent liquidation discount. Consequently, the original Hilliard-Lyons appraisal arrived at a date-of-death fair market value of $ 6,300,000. On October 2, 1986, Hilliard-Lyons revised this conclusion to take into account the Woodward Hanson appraisal of the Collier County property. Using Woodward Hanson's value of $ 6,354,200 for the Collier County property (plus a parcel erroneously included), Hilliard-Lyons determined that the date-of-death value of the A. L. Dougherty Co., Inc., stock was $ 7,800,000. Subsequently, Hilliard-Lyons concluded that using the Woodward Hanson value of $ 5,787,200 for the Collier County property exclusive of the erroneously included parcel would reduce the Hilliard-Lyons determination of value of the A. L. Dougherty Co., Inc., stock to $ 7,400,000. ULTIMATE FINDINGS *312 OF FACT
(1) The date-of-death fair market value of the Charlotte County property was $ 1,700,000. (2) The date-of-death fair market value of the A. L. Dougherty Co., Inc., stock was $ 6,381,050. OPINION The first issue for our decision is the fair market value of decedent's Charlotte County property. The Charlotte County property was reported on decedent's estate tax return at a date-of-death fair market value of $ 902,400. Respondent determined that the date-of-death fair market value of the Charlotte County property was $ 1,700,000. Petitioner contends that $ 902,400 was the correct date-of-death fair market value of the Charlotte County property. Petitioner bears the burden of proving that respondent's determination is incorrect. Rule 142(a). Property includable in a decedent's gross estate is included at its fair market value either as of the date of the decedent's death or as of the alternate valuation date as provided in section 2032. Secs. 2031(a), 2032; sec. 20.2031-1(b), Estate Tax Regs. Fair market value is the "price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to *313 sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs.; United States v. Cartwright, 411 U.S. 546, 551 (1973); Estate of Hall v. Commissioner, 92 T.C. 312 (1989); Estate of Heckscher v. Commissioner, 63 T.C. 485, 490 (1975). The willing seller and buyer are hypothetical rather than specific individuals or entities. Estate of Bright v. United States, 658 F.2d 999, 1005-1006 (5th Cir. 1981). The determination of value is to be made as of the valuation date and knowledge of future events that may have affected the value cannot be attributed to the hypothetical buyer or seller. Sec. 20.2031-1(b), Estate Tax Regs. Expert opinion is admissable if it will assist the trier of fact to understand evidence that will determine the fact in issue. See Fed. R. Evid. 702. The trier of fact must weigh such evidence in light of the demonstrated qualifications of the expert and all other credible evidence. Estate of Christ v. Commissioner, 480 F.2d 171, 174 (9th Cir. 1973), affg. 54 T.C. 493 (1970). We are not bound by *314 the opinion of any expert witness when that opinion is contrary to our judgment. Estate of Kreis v. Commissioner, 227 F.2d 753, 755 (6th Cir. 1955), affg. a Memorandum Opinion of this Court. We may embrace or reject expert testimony, whichever, in our best judgment, is appropriate. Helvering v. National Grocery Co., 304 U.S. 282 (1938). Petitioner relies on the appraisal submitted with the estate tax return and the report and testimony by Allen Dougherty to support its contention that the date-of-death fair market value of the Charlotte County property was $ 902,400. J. Gordon Colcord, who prepared the appraisal upon which the estate tax return was based, is deceased and, accordingly, his determination was not subject to cross-examination. Accordingly, we give his appraisal no more weight than we do the estate tax return itself. Allen Dougherty is a co-executor of the estate and the son of the decedent. We find that it was in Allen Dougherty's interest to have a low appraisal of the Charlotte County property. Consequently, we give little weight to his report and testimony on this issue. We consider the appraisal of the Charlotte County property *315 by respondent's expert witness, W. Stanley Hanson, Jr., to be much more reliable than either appraisal submitted by petitioner. Mr. Hanson, an M.A.I., has been engaged in the sale and appraisal of real estate since 1963, and has been engaged exclusively as an independent fee appraiser since 1965. Mr. Hanson was the Lee County, Florida, Tax Assessor from August 1955 to 1961. Mr. Hanson is a qualified appraiser and does not have any personal interest in the outcome of this case. Mr. Hanson's appraisal was thorough and credible. Petitioner criticized Mr. Hanson's appraisal, arguing that the appraisal was performed during the driest part of the year, that there were factual errors in the appraisal, and that Mr. Hanson's comparable sales were not good comparable sales. However, Mr. Hanson exhibited great familiarity with the Charlotte County-Lee County area of Florida. Accordingly, we are convinced that Mr. Hanson had the experience to take the time of year he viewed the subject property into account in his appraisal. In addition, we are not convinced that Mr. Hanson's appraisal contains the factual errors that petitioner claims it does. The only support for petitioner's claims *316 that Mr. Hanson's appraisal contains factual errors is the appraisals by Mr. Colcord and Mr. Dougherty. As we stated previously, we consider Mr. Hanson's appraisal to be much more reliable than either the Colcord or the Dougherty appraisal. We are therefore unpersuaded that Mr. Hanson's appraisal contains the factual errors petitioner claims. Similarly, we are convinced that the sales Mr. Hanson selected as comparable sales are similar enough to the subject property to be used as comparable sales. Petitioner's arguments to the contrary are unconvincing and are not supported by reliable evidence. We have considered all of petitioner's arguments on this issue and do not find them convincing. Accordingly, we find that the value of the Charlotte County property on the date of the decedent's death was $ 1,700,000. The second issue for our consideration is the date-of-death fair market value of the decedent's 100-percent beneficial interest in the A. L. Dougherty Revocable Trust of 1964. The sole asset of the Trust on the date of death was 100 percent of the outstanding shares of A. L. Dougherty Co., Inc. The A. L. Dougherty Co., Inc., owned, among other things, real estate in Lee *317 and Collier Counties, Florida. The parties disagree on the date-of-death value of the Lee and Collier County properties. Accordingly, to decide the value of A. L. Dougherty Co., Inc., we must first decide the date-of-death fair market values of the Lee and Collier County properties. A. L. Dougherty Co., Inc., owned an undivided one-half interest in 1,063 acres located in Lee County. Petitioner contends that the date-of-death fair market value of the entire fee interest in the Lee County property was $ 900,000. Respondent contends that the entire fee interest in the Lee County property had a date-of-death fair market value of $ 1,300,000. The Lee County property was valued for petitioner by J. Gordon Colcord in a report dated April 30, 1980. American Valuation Consultants, Inc., relied on the Colcord report in its appraisal of the A. L. Dougherty Co., Inc., stock, which was used in preparing the estate tax return. Mr. Colcord is deceased and was therefore not available at trial for cross-examination by respondent. Accordingly, as previously noted, we give little weight to the appraisal by Mr. Colcord. Petitioner submitted reports by Allen L. Dougherty and Donald S. Rogers. *318 In his report dated April 1, 1987, Mr. Dougherty concluded that the date-of-death value of the entire fee interest in the Lee County property was $ 903,550. As we stated in connection with the valuation of the Charlotte County property, we give little weight to Mr. Dougherty's appraisal because, as the son of the decedent, he has a personal interest in having the Lee County property valued at a low amount. Mr. Rogers, in a report dated April 6, 1987, concluded that the date-of-death value of the entire fee interest in the Lee County property was $ 900,000. Mr. Rogers is an Indiana appraiser, is not licensed as a broker in the State of Florida, and has never appraised Florida real estate for a fee before. Mr. Rogers spent three days inspecting property in connection with his appraisal of the Lee County property. Because of his lack of familiarity with property in the Lee County area, Mr. Rogers relied heavily on information from Thomas H. Baker, a realtor who had extensive business dealings with the decedent, and Thomas H. Baker's son, Thomas R. Baker. Although Mr. Rogers is a qualified appraiser, we do not consider his report to be as reliable as that of respondent's expert *319 because of Mr. Rogers's lack of experience in appraising Florida real estate. The Lee County property was appraised for respondent by W. Stanley Hanson, Jr. In his report dated November 16, 1982, Mr. Hanson concluded that the entire fee interest in the Lee County property was worth $ 1,300,000 as of the decedent's date of death. As we stated earlier, Mr. Hanson is experienced at appraising Florida real estate. Among his other qualifications, Mr. Hanson was the Lee County Tax Assessor from 1955 to 1961. Because of Mr. Hanson's familiarity with the Lee County area, we consider his report and testimony to be much more reliable than the report and testimony of Mr. Rogers. Accordingly, we find that the value of the entire fee interest in the Lee County property on the decedent's date of death was $ 1,300,000. A. L. Dougherty Co., Inc., owned 717.63 acres of land located in Collier County, Florida. Petitioner contends that the date-of-death value of the Collier County property was $ 4,108,100. Respondent contends that the date-of-death value of the Collier County property was $ 5,787,150. The Collier County property was appraised for petitioner by Addison B. Miller in a report *320 dated May 13, 1980, at a value of $ 4,500,200. American Valuation Consultants, Inc., relied on this appraisal in appraising the A. L. Dougherty Co., Inc., for the decedent's estate tax return. Petitioner submitted appraisals by Allen Dougherty and Kushman, Stokes to support its contention that the value of the Collier County property was $ 4,108,100 on the decedent's date of death. Allen Dougherty valued the Collier County property at $ 4,105,080 as of the date of death. We give little weight to the valuation by Allen Dougherty because, as we have previously stated, he has a personal interest in the outcome of this case. Kushman, Stokes valued the Collier County property at $ 4,362,000 as of the date of the decedent's death. At trial, petitioner presented the testimony of Willis Kushman of Kushman, Stokes. We found Mr. Kushman to be a competent appraiser, familiar with Florida real estate, and a credible witness. The main weakness in Mr. Kushman's testimony and report is his lack of specificity with respect to the adjustments he made. We find that Mr. Kushman's comparable sales are comparable to the subject property and that Mr. Kushman made adjustments for location, environmental *321 factors, and other appropriate factors. However, Mr. Kushman's report should have been more specific as to exactly why he made the adjustments that he did. The comparable sale that we are most concerned about is Mr. Kushman's parcel three, in which the assessed value is approximately five times as high as Mr. Kushman's value for this parcel. Mr. Kushman testified that assessed values are generally lower than fair market value, but he was unable to adequately explain why his value for parcel three was so much lower than the assessed value. Respondent's expert, Woodward Hanson, determined that the date-of-death value of the Collier County property plus a parcel not owned by the decedent was $ 6,354,200. The value of the Collier County property determined by Woodward Hanson exclusive of the parcel not owned by the decedent was $ 5,787,200. Woodward Hanson has been associated with his father, W. Stanley Hanson, Jr., as an associate appraiser since June of 1977. At the time of the appraisal, Woodward Hanson was an M.A.I. candidate, and he has since the appraisal become an M.A.I.Woodward Hanson, like Mr. Kushman, analyzed comparable sales to determine the value of the Collier County *322 property. However, Woodward Hanson's report was more specific regarding the reasons for the various adjustments he made to the value of his comparable sales in reaching his determination. The most significant difference between the Kushman appraisal and Woodward Hanson's appraisal was the value for the parcel designated by Mr. Kushman as parcel three. Parcel three was valued by Mr. Kushman at $ 400,000 and by Woodward Hanson at $ 1,835,300. The assessed value of parcel three was $ 2,034,025. While we recognize that the assessed value of property is not necessarily its fair market value, we also recognize that, as Mr. Kushman testified, the assessed value of property is normally lower than its fair market value. Mr. Kushman was unable to satisfactorily explain why his determination of the fair market value of parcel three was so low in comparison with the assessed value. Accordingly, we have more confidence in Woodward Hanson's determination of value for parcel three because it more nearly approaches the assessed value. In addition, although we found Mr. Kushman to be a competent appraiser and a credible witness, we have more confidence in Woodward Hanson's valuation of the Collier *323 County property because Woodward Hanson's report was more specific regarding the adjustments he made to his comparable sales. Accordingly, we find that the value of the Collier County property on the decedent's date of death was $ 5,787,200. Having decided the value of the Lee and Collier County properties, we can now consider the value of the A. L. Dougherty Co., Inc. Petitioner valued the A. L. Dougherty Co., Inc., stock at $ 4,000,000 on decedent's estate tax return based on a report by American Valuation Consultants, Inc., a subsidiary of Valuation Research Corporation. Petitioner now contends that the date-of-death fair market value of A. L. Dougherty Co., Inc., was $ 4,300,000. Respondent contends that the date-of-death value of the A. L. Dougherty Co., Inc., stock was $ 7,400,000. In support of its contention that the A. L. Dougherty Co., Inc., stock was valued at $ 7,400,000, respondent presented an appraisal by J. J. B. Hilliard, W. L. Lyons, Inc. (hereinafter Hilliard-Lyons), and the testimony of James E. Graves of Hilliard-Lyons. At trial, petitioner moved to strike the Hilliard-Lyons appraisal submitted by respondent because E. Halsey Sandford, who petitioner contends *324 wrote the report, failed to testify. We took this motion under advisement. Petitioner contends that Rule 143(f) requires that the Hilliard-Lyons report be excluded because Mr. Sandford failed to testify. Rule 143(f) provides that an expert witness' report is treated as the direct testimony of the expert witness, unless the Court determines that he is not qualified as an expert, and that An expert witness' testimony will be excluded altogether for failure to comply with the provisions of this paragraph, unless the failure is shown to be due to good cause and unless the failure does not unduly prejudice the opposing party, such as by significantly impairing his ability to cross-examine the expert witness or by denying the opposing party the reasonable opportunity to obtain evidence in rebuttal to the expert witness' testimony.
James E. Graves of Hilliard-Lyons testified that he and E. Halsey Sandford had co-authored the report. Mr. Graves testified that generally Hilliard-Lyons' reports are signed by Hilliard-Lyons as a firm, but that Mr. Sandford had signed this report because his name had been on the original contract with respondent. At trial, Mr. Graves *325 accepted responsibility on behalf of Hilliard-Lyons for everything in the report. Furthermore, we are persuaded that Mr. Sandford's testimony would merely have been duplicative of that of Mr. Graves, or vice-versa. On this basis, we admitted Mr. Graves' testimony and the Hilliard-Lyons report subject to petitioner's motion to strike. Petitioner contends that it will be prejudiced if the Hilliard-Lyons report is admitted into evidence because E. Halsey Sandford was not available for cross-examination. We find that petitioner was not prejudiced since Mr. Graves, a co-author of the report, took full responsibility for the report and was available for cross-examination. Petitioner further contends that Fed. R. Evid. 705 requires that an expert witness be available for cross-examination and that because Mr. Sandford was not available for cross-examination, the Hilliard-Lyons report is inadmissable. Petitioner's argument is based on the incorrect assumption that respondent's expert witness was Mr. Sandford. Respondent's expert witness was Hilliard-Lyons, not Mr. Sandford, and Mr. Graves, a representative of Hilliard-Lyons, was available for cross-examination. *326 Petitioner's reliance on Fed. R. Evid. 705 is, therefore, misplaced. Accordingly, we deny petitioner's motion to strike respondent's expert witness report. However, we give less weight to the Hilliard-Lyons report than we would have if Mr. Sandford had testified. To determine the fair market value of the stock of the A. L. Dougherty Co., Inc., Hilliard-Lyons determined the net asset value of the company, reduced that amount for operating and liquidation costs, and then applied a 20-percent discount for costs of liquidation. Respondent argues that because the Trust owned a 100-percent interest in the A. L. Dougherty Co., Inc., the Trust would not have sold the stock of the A. L. Dougherty Co., Inc., for less than the value of the net assets less the costs of liquidation. Respondent cites Estate of Jephson v. Commissioner, 87 T.C. 297 (1986), as support for this argument. In Estate of Jephson v. Commissioner, supra, the decedent owned all of the stock of two investment companies on the date of her death. The assets of both companies consisted solely of cash and marketable securities. Under these circumstances, *327 we held that the value of the stock of each investment company was its net asset value reduced by the cost of liquidation. The factors which led us to this conclusion were: (1) All the assets of both investment companies were liquid assets, i.e., cash and marketable securities; (2) neither corporation had any liabilities which had to be seriously considered in valuing the companies; (3) the decedent's 100-percent ownership of both companies gave her (or her estate) the unqualified right to liquidate both companies at any time. However, we recognized that the value of an interest in an investment company is not always equal to its proportionate share of the company's net asset value. We acknowledged that we have in the past applied discounts for minority interests and for the nonmarketability of an investment company's stock, particularly where its assets consist of real estate or other nonliquid assets. The instant case differs from Estate of Jephson v. Commissioner, supra, in that the assets of A. L. Dougherty Co., Inc., are primarily real estate and other nonliquid assets. Accordingly, Estate of Jephson v. Commissioner, supra, does not *328 support respondent's position. Instead, the instant case is similar to the situations we mentioned in Estate of Jephson v. Commissioner, supra, where a discount for nonmarketability would be appropriate because the assets of A. L. Dougherty Co., Inc., consist largely of real estate and other nonliquid assets. Consequently, we do not agree with respondent that the correct way to value the A. L. Dougherty Co., Inc., stock is to determine the net asset value (exclusive of operating and liquidation costs) and then apply a 20-percent discount for liquidation costs. Petitioner bases its contention that the stock of A. L. Dougherty Co., Inc., had a date-of-death value of $ 4,300,000 on a report, letter, and testimony by Ernest Lawinger of Valuation Research Corporation. Mr. Lawinger valued the A. L. Dougherty Co., Inc., stock at $ 4,300,000 in a report dated June 4, 1985. In a subsequent letter dated April 7, 1987, Mr. Lawinger stated that revision of two appraisals of real estate owned by A. L. Dougherty Co., Inc., had no effect on his date-of-death fair market value for the A. L. Dougherty Co., Inc., stock. Mr. Lawinger valued the stock by determining the net *329 asset value of the company and then applying discounts for operating and liquidation costs and for nonmarketability. In determining the net asset value of the company, Mr. Lawinger valued the company's interest in land held for resale. Mr. Lawinger took the appraised value of the land, applied a discount to reach an indicated market value, and multiplied the result by A. L. Dougherty Co., Inc.'s percentage ownership of the land. Mr. Lawinger added the resulting figure to the fair market value he had determined for the company's other assets and reduced the result by the amount of the company's liabilities to determine the net asset value. Mr. Lawinger concluded that a ten-percent discount for incremental management costs due to the nonhomogeneous nature of the assets of the A. L. Dougherty Co., Inc., was appropriate. Mr. Lawinger also concluded that a 25-percent discount for lack of marketability was appropriate. Mr. Lawinger therefore applied a 35-percent discount to the net asset value to determine the fair market value for the A. L. Dougherty Co., Inc., stock. Mr. Lawinger's report was excellent and his testimony was clear and credible. Respondent contends that because the *330 Trust held 100 percent of the A. L. Dougherty Co., Inc., stock, no discount for lack of marketability was applicable. Respondent bases this contention on Estate of Jephson v. Commissioner, supra.As we discussed previously, rather than supporting respondent's position, Estate of Jephson v. Commissioner, supra, supports petitioner's position that a discount for lack of marketability is applicable. We acknowledged in Estate of Jephson v. Commissioner, supra, that a discount for nonmarketability may be applicable where the assets of an investment company consist of real estate or other nonliquid assets. We agree with Mr. Lawinger that a 25-percent discount for lack of marketability is appropriate for the stock of A. L. Dougherty Co., Inc. We also agree with Mr. Lawinger that a ten-percent discount for incremental management costs is appropriate. The assets of A. L. Dougherty Co., Inc., are varied and there would be management costs that should be taken into account in valuing the stock. However, we do not agree with the discounts that Mr. Lawinger applied to the appraised values of the real estate in Bloomington, Lee *331 County, and Collier County. Mr. Lawinger applied discounts to the appraised values of all three properties to reach indicated fair market values. The appraised values are the fair market values, so the discounts applied by Mr. Lawinger are not necessary. Although we find that the discounts applied by Mr. Lawinger were inappropriate, we agree with Hilliard-Lyons that a 15-percent discount is necessary to reflect the co-tenancy of the Lee County property. Other than the discounts applied to the real estate, we agree with Mr. Lawinger's method of valuing the stock. Accordingly, to value the stock, we substitute into Mr. Lawinger's calculations the values we found for the Lee and Collier County properties, but we do not use Mr. Lawinger's discounts to the appraised values of the real estate. We value A. L. Dougherty Co., Inc.'s interests in the land held for resale as follows: the interest in the Bloomington property is valued at $ 71,000 ($ 71,000 appraised value times 100-percent interest), the interest in the Lee County property is valued at $ 552,500 ($ 1,300,000 times 50-percent interest less 15-percent co-tenancy discount), and the interest in the Collier County property is *332 valued at $ 5,787,200 ($ 5,787,200 times 100-percent interest). The total value of the company's interests in land held for resale is therefore $ 6,410,700, which we round off to $ 6,400,000. Substituting this $ 6,400,000 for the $ 3,300,000 Mr. Lawinger used in determining the net asset value gives a net asset value for A. L. Dougherty Co., Inc., of $ 9,717,000. Discounting this figure by 35 percent for nonmarketability and operating and liquidation costs gives a fair market value of $ 6,316,050. Accordingly, we find that the fair market value of the A. L. Dougherty Co., Inc., stock on the date of the decedent's death was $ 6,316,050. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. The parties stipulated to the following date-of-death values: (a) The fair market value at date of death of a 50-percent interest in Dougherty Farms, a Florida partnership, was $ 206,513.66 instead of $ 193,869 as shown on the estate tax return; (b) The fair market value at date of death of a 50-percent interest in Dougherty and Dougherty, a New Albany, Indiana partnership, was $ 0 instead of $ 61,062 as shown on the estate tax return; (c) The fair market value at date of death of the decedent's distributive share of the estate of Mary Frances Dougherty was $ 68,244.77 instead of $ 69,306.82 as shown on the estate tax return; (d) The fair market value at date of death of the interpolated terminal reserve of New York Life Insurance Company policy #23-242-338 on the life of Charlotte K. Dougherty was $ 1,466.36 instead of $ 3,000 as shown on the estate tax return; (e) The fair market value at date of death of the decedent's claims in the bankruptcy cases of D. H. Overmyer Co., Inc., was $ 0 instead of the $ 15,000 shown on the estate tax return; and (f) The fair market value at date of death of the decedent's individual income tax liability for the taxable year 1979 was $ 1,587.62. The parties also agree that petitioner is entitled to claim additional fees and other expenses. These fees and expenses will be considered in a Rule 155 computation. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect as of the date of the decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩